### HOPPER PAPER CO. v. BALTIMORE & O. R. CO.

#### No. 9894.

United States Court of Appeals Seventh Circuit.

Dec. 12, 1949.

---

180

James J. Graham, Springfield, Ill., Graham & Graham, Springfield, Ill. (Frank H. Cole, Jr., Cincinnati, Ohio, and Edwin H. Burgess, Baltimore, Md., of counsel), for appellant.

Clayton J. Barber, Alton G. Hall, Henry R. Barber, Springfield, Ill., for appellee.

Before KERNER, LINDLEY, and SWAIM Circuit Judges.

KERNER, Circuit Judge.

In the District Court the case was tried by the court without a jury, and a judgment was entered in favor of plaintiff. This judgment, defendant seeks to reverse.

Plaintiff, on August 16, 1947, sued defendant, a Maryland corporation engaged in the business of transporting property by rail in interstate commerce, for the admitted value of a carload of paper. The defense pleaded was that plaintiff failed to file a written notice of claim with defendant in accordance with § 2(b) of the bill of lading which provides:

"As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property * * * or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

*The facts.* On August 10, 1945, plaintiff, naming its agent, Stanford Paper Company, as consignor, loaded the paper for delivery to the Government Printing Office at Washington, D. C., as consignee. The bill of lading contained the language already quoted. While in transit, on August 16, the paper, except for some salvage, was destroyed in a railway wreck between two of defendant's trains. The salvage was sold by defendant—without plaintiff's knowledge—for $100, but no accounting was made therefor.

On August 18 defendant advised the consignor by wire that the 18 skids of paper for the United States Government had been de-

stroyed in an accident, and on the same date it sent a similar telegram to the Government Printing Office. On July 30, 1946, defendant received a letter from the consignor, and attached thereto was a written claim for $4,224.96 for the loss of the 18 skids of paper.

Thus it appears that no claim was filed by plaintiff within nine months after the delivery of the paper to defendant. But defendant had actual knowledge of the loss on August 16, 1945, and the court found as a fact that "Defendant knew that it had destroyed such paper and had at least as much if not more knowledge in relation to the damage in question as plaintiff," and in a memorandum opinion the court stated, "To hold that plaintiff must comply strictly with the terms of the bill of lading where defendant was already in possession of all pertinent facts and had itself first given notice to plaintiff of the disaster, would certainly be to require a useless act. This the law does not favor."

Defendant contends that actual knowledge of a loss on the part of a carrier does not dispense with the necessity for the filing of a claim in writing within the time required by the bill of lading. In support of its contention it cites the cases appearing in the margin.[1]

■ The argument is that the statute involved is a limitation law enacted for the special protection of interstate carriers, requiring that claims be filed and suits commenced against them within certain periods, and that the history of the statutory development shows that a claim in writing is required to be filed even though the carrier may have knowledge of the loss or damage. We do not think it necessary to discuss the cases cited by defendant, for the reason that they are distinguishable on the

facts. None of them have passed upon the identical problem with which we are confronted here and hence they are not controlling.

The applicable section of the Interstate Commerce Act, § 20(11), 49 U.S.C.A. § 20 (11), requires a common carrier receiving property for transportation in interstate commerce to issue a receipt or bill of lading therefor, and makes it liable to the lawful holder thereof for any loss or damage to such property, and contains a number of provisos, one of which provides that it shall be unlawful for the carrier to provide by rule, contract, or otherwise, a shorter period for the filing of claims than nine months. The section also expressly provides that no contract, rule, or other limitation of any character whatsoever shall exempt the carrier from the liability thereby imposed.

As to the claim that the statute is a limitation law, it will suffice to say it has been held that the above-quoted language was not intended to operate as a statute of limitation, Louisiana & Western Railroad Co. v. Gardiner, 273 U.S. 280, 284, 47 S.Ct. 386, 71 L.Ed. 644, and that the general rule in cases such as ours is, that failure to give notice of a claim for damages or loss in accordance with a stipulation in a contract for the shipment of goods is excused, or is inapplicable, where the carrier has or is chargeable with actual knowledge of all the conditions as to the damages that a written notice could give. 9 Am.Jur. § 803, p. 920. See also 13 C.J.S., Carriers, § 240(a), p. 487. In Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948, the Court, in speaking of the objective of the language in a bill of lading requiring the filing of a claim, 241 U. S. at page 196, 36 S.Ct. at page 544, said: "The purpose of the stipulation is not to

1. Southern Pacific Co. v. Stewart, 248 U.S. 446. 39 S.Ct. 139, 63 L.Ed. 350; Georgia Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948; Chesapeake & Ohio Ry. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983; St. Louis, I. M. & So. Ry. Co. v. Starbird, 243 U.S. 592, 37 S.Ct. 462, 61 L.Ed. 917; Davis v. Roper Lumber Co., 269 U.S. 158, 46 S.Ct. 28, 70 L.Ed. 209, 44 A.L.R. 1357; American Ry. Express Co. v. The Fashion Shop, 56 App.D.C. 114, 10 F.2d 909; Manby v. Union Pacific R. Co., 8 Cir., 10 F.2d 327; The Natal, 9 Cir., 14 F.2d 382; The James Griffiths, D.C., 3 F.Supp. 685; Barrett v. Van Pelt, 268 U.S. 85, 45 S.Ct. 437, 69 L.Ed. 857; and Berg v. Schreiber, 337 Ill.App. 477, 86 N.E.2d 125.

182

escape liability, but to facilitate prompt investigation," and continuing at page 198 of 241 U.S., at page 545 of 36 S.Ct.: "It is addressed to a practical exigency and it is to be construed in a practical way."

In Lehigh Valley R. Co. v. State of Russia, 2 Cir., 21 F.2d 396, the consignee sued to recover the value of munitions destroyed. The owner of the munitions did file a claim for the loss within the period prescribed by the bill of lading. The defendant, however, contended that the plaintiff could not recover because it had filed no claim at the point of delivery or at the point at which the shipment originated as required by the bill of lading. It appears that the carrier had written a letter to the shipper's agent advising him that the goods shipped had been destroyed, and giving him a list of the cars for which recovery was sought. The court held that since the carrier had knowledge of the loss which it had reported to the consignee, the plaintiff could recover. See also Kime v. Southern Ry. Co., 153 N.C. 398, 69 S.E. 264, 265; Drake v. Nashville, C. & St. L. R. Co., 126 Tenn. 627, 148 S.W. 214, 219; Cockrill v. Missouri Kan. & Texas Ry. Co., 90 Kan. 650, 136 P. 322, 323; Deaver-Jeter Co. v. Southern Ry. Co., 91 S.C. 503, 74 S.E. 1071, 1072, Ann.Cas.1914A, 230; Scott County Milling Co. v. St. Louis I. M. & S. R. Co., 127 Mo.App. 80, 104 S.W. 924, 928.

■ In the instant case it is undisputed that defendant and its agents were fully aware and cognizant of the existence of all the facts concerning the wreck and destruction of the carload of paper. In such a situation a formal notice by plaintiff to the defendant could not have accomplished anything more. Hence, we conclude that the carrier may not use the provisions of the bill of lading to shield itself from the liability imposed upon it by the statute and the common law for its negligent destruction of the shipper's property. To hold otherwise would not be construing the bill of lading "in a practical way."

■ One other matter requires but a few words. The defendant makes the point that to affirm the judgment "would open the doors to the possibility of widespread discrimination which was the principal evil at which the Interstate Commerce Act was aimed." The argument is, "to place within the power of the carrier the ability to favor any one shipper over others" would be discrimination and a violation of the Act. "As to favored shippers, the carrier would need only to admit that it knew of the loss."

Concededly, one of the principal evils at which the Act was aimed was discrimination by carriers. State of New York v. United States, 331 U.S. 284, 296, 67 S.Ct. 1207, 91 L.Ed. 1492. But permitting knowledge to supply the written notice is not discrimination, nor is it a preference in favor of a particular shipper at the expense of the other. It is a mode of proof, applicable alike to all railroads and in favor of all shippers. Baldwin v. Atlantic Coast Line R. Co., 170 N.C. 12, 86 S.E. 776; Schloss-Bear-Davis Co. v. Louisville & N. R. Co., 171 N.C. 350, 88 S.E. 476; The Argentino, D.C., 28 F.Supp. 440. We cannot agree that where a carrier has full knowledge of a loss caused by its admitted negligence and a written record thereof in its files, the allowance of a recovery for the admitted value of the loss could be construed as discrimination in favor of the shipper or against the carrier. Obviously, the same rule would uniformly apply under similar facts to all other shippers and carriers.

For the reasons stated, the judgment of the District Court must be affirmed. It is so ordered.